# SUPREME JUDICIAL COURT

FOR THE

COUNT OF NORFOLK, OCTOBER TERM 1852, AT
DEDHAM.

PRESENT:

Hon. LEMUEL SHAW, Chief Justice.
Hon. CHARLES A. DEWEY,
Hon. THERON METCALF,
Hon. GEORGE T. BIGELOW, } Justices.
Hon. CALEB CUSHING,

---

WORCESTER COUNTY BANK *vs.* DORCHESTER AND MILTON
BANK.

*It seems,* that the holder of a bank bill, which has been stolen from the bank,
need not prove how he came into possession of it, in order to recover against the
bank.

A party taking a bank bill in good faith, may recover upon it, although he be
guilty of gross negligence in not ascertaining that it had been fraudulently put
in circulation.

· ASSUMPSIT on a bank bill of the defendant bank, for fifty
dollars, dated March 1, 1849. It was submitted on an agreed
statement of facts, which, so far as material, were as follows:
The bill in suit had never been issued by the defendants,

but had been forcibly stolen from their vault, in a complete state of preparation for issue, on the night of the first of June, 1850. Notices of the robbery were published by the defendants in several papers, one of which, the Boston Journal, was regularly taken by one of the directors of the plaintiff bank, and a notice was posted in several towns, and sent to all the New England banks. It was agreed that the defendants' cashier would testify that he does not know that the Suffolk Bank, after the robbery, ever sent notice or gave notice that they should not redeem the bills of the defendant bank, but that said bills were not in fact thereafter received or redeemed by the Suffolk Bank; that bank bills not redeemed at the Suffolk Bank are discredited, and not received or redeemed, it being the practice with all banks to keep a deposit there and have their bills received and distributed by said Suffolk Bank; the Suffolk Bank being in that respect the general regulator of the currency of this commonwealth, but he does not know that the said Suffolk Bank, or the defendants, or any one else ever sent notice to the plaintiff bank that the bills of defendant bank were not received or redeemed at their bank; that one Brooks was arrested in Providence, for said larceny, and convicted thereof, and sent to the state prison, and that said larceny, and the arrest of said Brooks, were matters of notoriety.

It was also agreed that if it was incumbent on the plaintiffs to prove how they became possessed of the said bill, Alexander Ballou, their cashier, would testify that the plaintiffs made a deposit at the Suffolk Bank in July, 1850, on the first day, and thereafter kept a deposit there; that the Bank of Commerce, in Boston, redeemed their bills; that it was the custom of said Ballou to send once or twice a week to the Bank of Commerce bills which he received of other banks; that he has no recollection of receiving the bill in suit, but has no doubt it was received by him as cashier of the plaintiff bank in the ordinary course of business, and that the full value thereof (fifty dollars) was given therefor. And that there was no reason known to him why the Bank of Commerce should return the bill to the plaintiffs, unless because it was contained

in a package of bills sent from plaintiff bank to said Bank of Commerce according to their usual practice, and that the Bank of Commerce returned said bill to the plaintiffs as a discredited bill, on the 6th of August, 1850, and that he has not now, nor had he at the time it was so returned, any recollection of having ever seen it before or of having received it, or of whom he received it, and that it was returned in a letter, saying, bill not received; that he never received any notice of the robbery, or of a refusal to redeem any of the defendants' bills signed by any officer of any bank, or that their bills were not redeemed; and that if any such notice had been received by the plaintiffs, he should have probably known it from his situation as cashier; that he had never noticed any handbills or posted notices; that he knew that the Suffolk Bank was the regulator of the currency, and that it was not his rule, and he did not mean to receive any New England bills that were not redeemable at the Suffolk Bank; that he saw a notice of the robbery in some paper, soon after the robbery, but before he was appointed cashier, and could not say whether he saw it in more than one paper or more than one time; and could not say what paper, and that the notice which he saw was a mere newspaper paragraph, and not an advertisement, as he thinks, but is not positive; that he does not know what papers were taken by the president or directors; that he saw notices of arrests for this robbery, but when or where, he does not recollect; that he does not remember hearing of the arrest of said Brooks.

It was agreed that the court shall have the right to draw the same inferences as the jury might do, and to render such a judgment in this case, as by law the parties are entitled to have entered.

*J. J. & M. S. Clarke,* for the plaintiffs.

*A. Churchill,* for the defendants.

METCALF, J. It is well settled in this commonwealth that in a suit by the holder of a promissory note or bill of exchange, which has been stolen, or which has otherwise been fraudulently put into circulation, the burden is on the plaintiff to prove that he came fairly into possession of it, under

such circumstances as entitle him to recover. *Munroe* v. *Cooper*, 5 Pick. 412. And it was contended by the counsel for the present defendants, in his learned and able argument, that the same rule of evidence is to be applied to the case of a stolen bank bill. We doubt this, but need not decide the point now. For, assuming that the burden is on the plaintiffs to prove that they fairly obtained the bill in suit, yet we are of opinion, upon the evidence submitted to us, that they have sustained that burden, and are entitled to reco·er. We cannot doubt that their cashier received the bill in the usual course of business, and for a valuable and full consideration. And though he seems not to have exercised great vigilance, yet we perceive, in his conduct, nothing like fraud or gross negligence. It does not appear that he had any notice, which he was bound to regard, that the defendants had been robbed. The only notice of that fact, which he remembers with any certainty, is, that he saw it stated in a newspaper paragraph.

It was once held that in the case of a bill of exchange or promissory note fraudulently put into circulation, the holder must show that he had used due and reasonable caution in taking it. But it has since been definitively adjudged that if he took it in good faith, he is entitled to recover on it; and that even gross negligence in him is not tantamount to fraud, although it may be given in evidence to a jury, as tending to prove fraud. The burden of proving good faith is all the burden which the law imposes on him. *Goodman* v. *Harvey*, 4 Adolph. & El. 870, and 6 Nev. & Man. 372; *Uther* v. *Rich*, 10 Adolph. & El. 790, and 2 P. & Dav. 385; 2 Greenl. Ev. § 639; 3 Kent Com. (7th ed.) 98, *note;* Chit. on Bills, (10th Amer. ed.) 257; Byles on Bills, (2d Amer. ed.) 143,148. In *Arbouin* v. *Anderson*, 1 Adolph. & El. N. R. 504, lord Denman said: "Acting upon the case of *Goodman* v. *Harvey*, which gives the law now prevailing on this subject, we must hold that the owner of a bill" [of exchange] "is entitled to recover upon it, if he has come by it honestly; and that that fact is implied *primâ facie* by possession; and that, to meet the inference so raised, fraud, felony, or some such matter, must be proved."

According to these authorities, the plaintiffs must have judgment, even upon the rule of evidence which the defendants would apply to them.   *Judgment for the plaintiffs.*